Arthur Wachtel, J.
I hereby find and decide that plaintiff is entitled to the following overcharges:
Bonus .................................$250.00 Overpayment........................... 23.00 Overcharges 1) Security .......................... 22.18 2) October rent ...................... 22.18 3) November rent ................... 12.45 $329.81
The entire transaction was fraught with overreaching. The landlord prepared a lease which tenant testified she signed without date, and incomplete, and which appeared to her to be blank except for her signature; and also an application for increase of rent. The lease is undated but was apparently filled in so as to specify a rent of $66.93 per month, for a term com *777 mencing December 1, 1957. The application for increase of rent indicates the date of October 1, 1957 on the statement of consent, was filed in the offices of the Temporary State Housing Bent Commission October 28, 1957 and seeks an increase to $59.45. The Bent Commission approved only $58.20 on November 8; yet the landlord required the tenant to pay $68.38 security and $68.38 for October, and further required the tenant to pay $100 as a deposit for the painting, which the landlord returned. The tenant testified the transaction took place on September 21 when the landlord insisted upon an additional payment of $23, ostensibly representing one-half month’s rent to the first of the month. The lease purports to be executed pursuant to subdivision 2 of section 33 of the State Bent and Eviction Begulations, but it is merely an attempt to obtain an increase even more than requested by the landlord on its application for increase and so violates said regulation.
The Legislature has clearly indicated its condemnation of any attempt on the part of landlords to take advantage of the shortage of housing accommodations during the emergency at the expense of the tenant. Section 1 of the Emergency Housing Bent Control Law, in setting forth the declaration and findings of the Legislature, specifically includes in its declaration the following: ‘ ‘ that such emergency necessitated the intervention of federal, state and local government in order to prevent speculative, , unwarranted and abnormal increases in rents ’ ’, and further states: ‘ that unless residential rents and evictions continue to be regulated and controlled, disruptive practices and abnormal conditions will produce serious threats to the public health, safety and general welfare; that to prevent such perils to health, safety and welfare, preventive action by the legislature continues to be imperative; that such action is necessary in order to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health ”. (State Besidential Bent Law, L. 1946, ch. 274, as amd. by L. 1957, ch. 755.)
In and by section 10 of the State Besidential Bent Law, the Legislature provided: “It shall be unlawful, regardless of any contract, lease or other obligation heretofore or hereafter entered into, for any person to demand or receive any rent for any housing accommodations in excess of the maximum rent * * * or to offer, solicit, attempt or agree to do any of the foregoing.”
In and by section 62 of the State Bent and Eviction Begulations, it is provided: “The maximum rents and other require *778 ments provided in these Regulations shall not be evaded, either directly or indirectly * * by modification of the services furnished or required to be furnished with the housing accommodations, or otherwise.”
In and by subdivision 5 of section 11 of the State Residential Rent Law the Legislature has specifically placed the burden of proof upon the landlord in these cases and has provided that the overcharge shall be the maximum of landlord’s liability “ if the defendant proves that the violation of the regulation or order in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation.” If the landlord’s conduct is not willful, certainly it constitutes a failure to take practicable precautions against the occurrence of the violation where he fails to abide by the strict requirements in respect of voluntary rental agreements, under subdivision 2 of section 33 of the State Rent and Eviction Regulations, as in the case at bar.
Subdivision 2 of section 33 provides that the voluntary rental agreement must: “ (b) provide[s] for a rent increase not in excess of 15 percent over the maximum rent then in effect ’ ’ and paragraph (e): “ Does not provide for the payment by the tenant of any rent in excess of the amount therein provided unless the maximum rent is thereafter increased by order of the Administrator to which the tenant has consented pursuant to paragraph 1 of this section ”.
Thus, the proper procedure is to limit the proposed lease to a rent increase not in excess of 15% over the maximum rent then in effect and the lease may then provide for additional rent such as may be fixed by the Temporary State Housing Rent Commission for increased services or equipment to which the tenant has consented pursuant to subdivision 1 of section 33 of the State Rent and Eviction Regulations. The landlord may not in a postdated lease specify a specific amount far in excess of even the amount set forth in his application for increase of rent, as in the case at bar. Even an attempt to incorporate in the lease a provision to superimpose a 15% increase upon an anticipated higher rental not yet in effect has been condemned, even though provision is made for such rent as may be adjusted and made retroactive. (See Administrator’s Opinion No. 119; see, also, Matter of Dicmac Holding Co. v. Weaver, 10 Misc 2d 121, affd. without opinion 4 A D 2d 859.) Any other procedure contrary to the strict compliance with the regulations opens the door to evasion.
The court is of the opinion that in this case utilization of a lease was merely a subterfuge for obtaining excessive and *779 improper payments. It is not merely a case of innocent miscalculation as to an anticipated order of increase by the Bent Commission; it was, in the opinion of the court, a calculated attempt at such profiteering that has been condemned by the Legislature and, at the very least, a complete failure and disregard on the part of the landlord to take practicable precautions against the occurrence of the violation.
Accordingly, treble damages are granted: $ 989.43
Counsel fees: 150.00
Total: $1,139.43.